May it please the Court, Nicholas Truglia received no charging document, no hearing, no constitutional due process before he was sentenced to 12 years of imprisonment for violating a rarely used statute. That sentence was multiple times longer than any other sentence across the country for that statute. Well, I mean, that's question begging, right? Because the government's and the district court's position would be he wasn't sentenced for violating the statute. The statute simply authorizes a resentencing if he doesn't comply with the restitution order, right? But looking at sentences under this statute, for under section 3614, this sentence is multiple times longer than the longest other one. But doesn't the reference point have to be the underlying statute? And here we have a $20 million fraud that occurred. Isn't that what we need to look at? Not just in the vacuum 3614? I'm not suggesting, Your Honor, look at it in a vacuum, but Judge Hellerstein at sentencing considered the conduct in not paying restitution as the basis of its sentencing. Even compared to fraud sentences, this sentence is well out of proportion with similar sentences. Can I ask you about, so the statute exists, and I know there is a request that we find the statute itself unconstitutional, but given the probation statute that does a similar thing in terms of authorizing full resentencing, I guess my question is if the statute itself can stand, should there be notice required of some kind? I'll tell you, I mean, I've been in this system for 26 years in different jobs, many of them in the criminal law side, and I don't think I've ever seen it. And so it's unlikely that people are going to know, oh, if I deliberately fail to pay restitution, I'm exposed to this. We do warn them of that at the plea and at the sentencing, at least I did, when it was a probation sentence, right? If you violate, you're coming back, and you can get up to whatever the statutory max is. So if the statute itself stands, should we impose some sort of requirement of notice? Definitely, Your Honor. There has to be some constitutional due process from a jury trial right, or at least the minimum due process requirements that probation violations have. Probation violations, violations of supervised release, all have notice, charging documents, hearings, minimum constitutional process. The question is notice of the statute. I mean, in DeFrancesco, didn't the Supreme Court say there wasn't a constitutional problem when that was like the first application of the special offender, or what is it, the dangerous special offender statute? So that's about a double jeopardy concern, which is different than the constitutional due process concern. Okay, so the constitutional due process concern is not being aware of the statute, it's about whether he had noticed that resentencing was on the table, right? No, it's the whole aspects of due process, Fifth Amendment and Sixth Amendment due process. Here, he was never arraigned, there was no charging document, there was no hearing related to the statute. But again, the arraignment assumes that it's a new crime, right? So I thought you were saying, even if it's a resentencing, he at least needs to have some kind of notice pursuant to due process. Right, so... But you're saying it has to be treated as a new crime? Is that the... I'm not saying it has to be, Your Honor. Even if it were treated as something similar to a probation violation, probation violations, violations of supervised release have notice, they have charging documents. That's what Mr. Trulia received here. He received a charging document related to a VOSR. He received a hearing related to a VOSR. It wasn't until after that process, which was never concluded, that then there was this pivot to a different proceeding, Section 3614. For that, he did not receive notice, a charging document, a hearing, or any constitutional due process. Instead, we have a record where the parties experienced offense... When Trulia raised this problem, didn't the district court say, okay, we'll have a new hearing. You can explain what you would have done differently if you had thought from the beginning that it was going to be a resentencing under the restitution statute? And then he decided to testify in his own defense and explain whatever he was going to explain. No, so the court offers to reopen a violation of supervised release hearing. That's not what constitutional due process is. First, the facts were different in the violation of supervised release proceeding, which was about whether he had made a good faith effort to pay restitution in 30 days, and other violation conduct. That is not the same as the disputed facts in Section 3614, which the big one is the willful failure to pay restitution. The strategic concerns are different in a proceeding under Section 3614 because the potential consequences are so high. So while counsel might have chosen to have Mr. Trulia testify, as happened here, Mr. Trulia ends up getting cross-examined with no warning, with no preparation, with no direct testimony. When we're in a violation of supervised release context, that might make sense for defense counsel to let a client do. It would not make sense if the person is facing a 20-year sentence. Can I just make sure I understand what notice you're objecting to? Are you saying that there should have been notice in, I believe, December 2021 at the plea, December 2022 at the sentencing regarding the possibility of 3614 coming into play? Or are you talking about starting in April 2023 on when we're dealing with the supervised release violations and the possibility of resentencing? Where do you see a problem with notice? Well, there's never notice. But do you think there needed to be notice at the guilty plea? I think that there should have been if this is going to be considered, and this court has never decided whether this is considered just part of the original guilty plea akin to violations of supervised release or if it's a new criminal offense. If it is part of the original sentencing consequences, yes, there should be notice at the guilty plea just as there is about supervised release. But Your Honor doesn't have to decide that because here there also isn't notice at the sentencing. And I think more crucially... I mean, is this correct? So in September and November 2023, there are three days of hearings on the violation of supervised release. You have all the testimony and so on. There's a status conference on November 20th, 2023. And the district court says he's inclined toward resentencing. And he says that truly it can reopen the proceedings to address changes in evidence and to brief whether he's prejudiced by that change. There's a show clause order in January 2024 for why resentencing or a contempt is not appropriate. In February 2024, the district court finds him in contempt and says, you can purge the contempt and I'm not going to do a resentencing if you manage to purge the contempt. In October 2024, there's a conference on the contempt and truly it can testify or not testify. Trulia is even released to go to Miami to see if he can make enough money to pay the restitution. In December 2024, there's a rescheduling for the resentencing. And then the initial resentencing is not until April 2025 and doesn't end until July 2025, right? I mean, that's a lot of process, right? A lot of opportunity to sort of correct the record, explain what evidence he wants to put on, explain why he's prejudiced by the focus of the proceedings. I mean, how does that fall short of notice and opportunity to be heard? That's not process. That's time. And during that time, counsel was focused on making objections to the proceedings and explaining that there had never been a hearing on section 3614. So notably, as Your Honor read through different court proceedings, at none of them was Mr. Trulia arraigned or charged formally with- But again, I mean, so just, I understand you have a different argument, but if we accept the premise that this is a resentencing on the original conviction and not a new charge, this is a lot of process for a resentencing. No, Your Honor. Even for a probation violation, that is the most minimal type of violation. Like leaving the district, the person would receive a charging document. They would have an opportunity for a hearing. And there would be an orderly process instead of the confused situation that happens here. This is exactly, this case is why due process is required. So that when counsel goes into court with his client, counsel and the client both understand what is happening and what is at stake. Here, it is clear throughout that counsel is confused and counsel is very experienced. Counsel's not confused because of a lack of experience, because this is an extremely unusual, rarely used statute. Judge Hellerstein says that he does not believe there is any sort of proceeding process required under section 3614. That can't be right. If that's true, then the statute is unconstitutional. Instead, this court should find… Well, he has hearings to make a determination as to whether the predicates of the statute for resentencing are met, whether he willfully refused to pay restitution. The court does not have a hearing on that, Your Honor. It specifically does not. The court has a violation of supervised release hearing. Well, Your Honor, he drew on evidence that was from the prior hearings and the violation of supervised release, but he took evidence on that question and made a determination. No, Your Honor. It's not even clear. I mean, why would it be the case that the district court could rely on evidence taken earlier in the proceedings, you know, for future proceedings? Like, you think he had to bring in the same witnesses and have them testify to the same issues? I don't think they would have testified necessarily to the same issues. The factual question was different. It was a good faith failure to pay in a specific amount of time. And that is what the hearing focuses on. It focuses on efforts made to pay in that window. That is a different factual question than willful failure to pay. And it's the government's burden to show that Mr. Trulia did that. Here, the court never holds a hearing on that. Okay, so, you know, my understanding of the record is the district court thinks, like, just doesn't believe Trulia that he's trying to pay. He says, you have these excuses that you don't have the password and whatever. I don't believe that. I think that you do have access to the Bitcoin and you don't want to pay. And he makes that determination based on the earlier evidence. So what's wrong with that? Is that really erroneous or there wasn't enough evidence to reach that determination? What's the objection to that? But he does make that finding. The fact that the court doesn't believe Mr. Trulia, that he thinks that he lied, the court definitely makes that finding repeatedly. That's not one of the elements under Section 3614. Under 3614, the court has to make specific findings related to willful failure to pay, alternatives to incarceration, and indigency. And the court doesn't do that. And the parties, after the hearing and throughout this confusing record, actually neither side seems to think that Mr. Trulia has access to any large amount of money. And by the end, it is very clear that Mr. Trulia simply cannot pay. He spends seven months or eight months... That may or may not be right, but the district court does pretty clearly think he has access to the money and is not paid on purpose, right? The district court thinks that, but the district court has not held a hearing with respect to that question. The district court kind of just waves away the indigency question just based on the fact that it believes that Mr. Trulia has portrayed himself as being wealthy, even though there's no evidence he actually is. Well, then we have our statements from Wells Fargo, and he has at least enough assets that he's not indigent. Yes, he has a small amount of assets at a previous time. So years before this resentencing happens, that would be a drop in the bucket in terms of the restitution order. Counsel makes clear that he cannot pay, and so the court is not making factual findings based on a hearing at which Mr. Trulia had processed. That's the constitutional problem. And then when we get to the sentencing, the sentencing itself was an extreme outlier that this court should find unreasonable for a number of different grounds. Can we talk about the vice video? Yes. So Judge Hellerstein relies on this video that predated Mr. Trulia's federal arrest, any arrest of Mr. Trulia. It finds that even though it's a cartoon video where you cannot see anybody's lips moving, that Mr. Trulia definitely said the words that were said. And it uses that video, that seven-year-old video that predates the arrest of Mr. Trulia's 20 years old as a basis to find his intent seven years later with respect to restitution. Well, it's not his intent with respect to restitution. He makes the statement at the time that he did the fraud, right? It was before he was arrested. Before he was arrested, but after he committed the fraud. He did the theft in January 2018, and he does the interview in September 2018, right? Yes. And so the district court says, well, what you say on the video is, you know, even if I go to prison for 10 years, it's worth it because I'm going to have access to all my Bitcoin, and when I get out after 10 years, I will be able to live a pretty good life because I'll have access to the money, right? And so it's about sentencing on the theft, and it's a contemporaneous description of his motivation for committing the crime. And the district court thing says, I don't think you're going to be deterred from future crime if you get less than 10 years because you've already said, you said contemporaneously with the crime, that it's worth it to you to commit the crime, even if you're sentenced to 10 years in prison. So let's just start correct, Your Honor. First, there wasn't sufficient evidence that Mr. Trulia actually said those words. Okay, well, that's a separate question. So we'll talk about whether it's valid, but I guess I just have this question. So since the statute says it's any sentence that could originally have been imposed, let's imagine that there was no restitution at all. That just never happened, and he's just being sentenced on the theft. And the district court says, I see you made this statement that you think the crime would be worth it even if you got 10 years in prison. Therefore, for the sake of deterrence, I'm going to give you a sentence above 10 years. Would that be available to the district court? That could not be the only factor, certainly. And looking at the video itself, it doesn't do it. It had to balance against other factors, I understand, but he could rely on that consideration, a need for deterrence. No, that video should have bared no weight. Why is that? So first, it's not clear that he's saying those words. Second, those words come directly after a clip where a different, unrelated person is sentenced to 10 years and keeps a large amount of Bitcoin. So it's clearly in relationship to that, as Mr. Trulia has no reason to think he'll be sentenced to 10 years, or indeed to anything. I mean, the statement is, it really wouldn't be that many years. It's not like murder. It's really just like a decade at most, is what people look at. And even then, I'd still have my money when I got out, because it's Bitcoin. It's not like a bank account. They can't take the money. I mean, obviously it would suck to go to jail for a decade, but the way I have everything set up, I don't think that will happen. Even if he's talking about somebody else, if we know that he just committed the same crime, doesn't it suggest that that's the way he thinks about this kind of crime? Your Honor, what Mr. Trulia thought seven years before, when he was 20 years old, and while there are years... You keep saying seven years before, but it's within a few months of him actually committing the crime for which he's being sentenced. The judge is using it to explain his later conduct, not the actual crime. So it's talking about the conduct that happens later. And importantly... Well, it's the conduct that happened at the time of sentencing, when he assured the judge he would pay the restitution. It's not the conduct years after sentencing. So Mr. Trulia doesn't say that. Mr. Trulia gives a heartfelt remorse statement. Counsel does say that he'll pay the restitution. But one thing that I think is missing from this discussion is Mr. Trulia didn't make $20 million. It's not that he was sitting on $20 million from this scheme. He was a minor participant who participated for a few hours when he was 20 years old, and he made between $600,000 and $700,000. Do you think the person who was out of $20 million thinks he was a minor participant here? Well, the person who lost that money, actually, has recovered a great deal of it from the person who was in charge of this conspiracy. And something that the judge was focused on at the original sentencing, but didn't mention at all at the later one, is that the government didn't arrest the other people who were higher up than Mr. Trulia, even though they knew who they were. And the judge originally was very troubled by that disparity, which existed exactly the same seven years later, and in fact, more so, because it's clear they know who that person is, as that person is involved in a civil case, and is paying a substantial sum of money to the wealthy person who had lost some of that money originally. That video could not be used as the judge used it as the reason for this extremely long sentence, a 12-year sentence that the government has to reach towards fraud cases where the people are actually sentenced within guidelines, even come up with sentences that are similar. So that means that in those cases the government reaches for, the conduct is much more aggravated, the guidelines are extremely high. Here, even using the fraud guidelines, Mr. Trulia's high end of the guidelines is 63 months. Instead, he gets 12 years based on this flimsy evidence. Based on the video, right? Because the sentence, the given is 10 years, because you said you could take it, plus two just to send a message. Exactly, Your Honor. It's based only on this video and ignoring all of the other 3553A factors. That is, I think, the definition of what a shockingly high sentence is without sufficient basis, without an explanation, without considering the totality of the factors. Okay. Thanks, Ms. Glass. It's time for rebuttal, so I'll hear from you again, but let's turn to the government. First, Mr. Capozzi. Good morning. May it please the Court. I am Timothy Capozzi. I represent the government. In this case, I also represented the government below. The appellant helped steal $20 million and then he lied that he would pay all that money back. Because of that lie, he received substantial leniency at sentencing. He then willfully refused to pay what he owed and instead made up a story to explain away that refusal. Your Honors, the appellant got a hearing, he got notice, he got a process. There is no double jeopardy issue here. As Judge Minasci recognized in DeFrancesco, as well as in this Court in Pettis, the question is whether or not Congress has acted clearly, and Congress certainly has. Congress passed 3614 over 30 years ago. It's been on the books. It's not a statute that comes up every day in court, to your point, Judge Miriam, but this is not the first case. This is not the first panel that has addressed 3614. The Sixth Circuit addressed it in Johnston in 2010. The Seventh Circuit addressed it in Hendricks in 2016, I believe. So this is a statute that's been there and the question is not whether or not this defendant had actual notice at the time of this case. So, at just about every guilty plea allocation in your district, the district judge advises a defendant of the consequences of violating supervised release of potential immigration consequences. Why? Should this be something that district courts are advising defendants of during a guilty plea allocation? The potential for 3614 kicking in? And district court judges certainly can do that, but the Constitution doesn't require your honor. And so, it's certainly something that the court could recommend that district court judges do, but there's nothing that would require constitutionally that every district court judge advise defendants of this possibility. Oftentimes, when we think of the defendant, like, so we have these cases that say that it's ineffective assistance of counsel if the defense attorney doesn't advise the client of immigration consequences. So to the extent that we think that they need to be informed and that might have affected their behavior, maybe his counsel should have explained to him the consequences, but it doesn't mean that the district court was obliged to explain the existence of this statute. Correct, your honor. Can you respond to Ms. Glass Howard's point that there may have been a hearing here, but was not a hearing on resentencing, it was not a hearing on the question of willfulness, and in light of that, we have a due process issue here. Your honor, the goal of the hearing was to facilitate the payment of restitution. That's why a hearing was held, and certainly preceding that hearing there was a violation report that had been filed and it was ostensibly a VOSR hearing. The question, the main question at that hearing was the same question, whether or not the defendant had made a good faith effort to pay restitution, and the evidence that was adduced at that hearing was certainly relevant to the question of whether or not the failure to pay restitution was willful. If the purpose of the hearing, I was sort of surprised to hear you say that the purpose of that hearing, the civil contempt holding, frankly, supports this idea, was to get him to pay the restitution, not to determine whether his conduct satisfied 3614. Well, your honor, what I should say is the court, based on the prior history of the case, was very interested in the fact of restitution being paid. And after the violation report had been filed at the first appearance, there was discussion among the parties about how the case would proceed. And there was great interest in proceeding in a manner to get the restitution paid. And the appellant said he wants to pay, he can't pay because there's a witness who has the keys to the safe essentially. And so we want an opportunity to have that witness testify and cross-examine that witness. And so a hearing was scheduled, and that witness testified. And we had multiple days of hearings. At the conclusion of those hearings, by November 20, 2023, it was abundantly clear that the court was considering a 3614 resentencing. And it's at that point where the court, and we quote all of the things that Judge Hellerstein said to the appellant in terms of, if you want additional hearing, any witness, any question, you want to testify again? Just say anything that you want, and we will do it so that I am sure that you've got the process, and that you are sure that you've got the process. And they never identify a single thing. It cannot be the case that simply because something originated as a VOSR, and through that process, it's determined that there was a willful failure to pay restitution, that it's over. You could never resentence because it originated in that way. What's his statutory maximum on revocation? Two or three years? One or the other, right? I believe it was a three-year. It's got to be one or the other, right? So assume it's three. Twenty years statutory max, right? Yeah, so three-year revocation. So doesn't it make a difference when you're going into the hearing? Doesn't your approach differ? Doesn't your you know, all of a sudden you've got this defendant making statements on the record, making representations through counsel, determining the approach he wants to take in response to the district judge's interest in ensuring that restitution is paid, and understanding that his maximum exposure criminally is three additional years of incarceration, plus some additional supervised release. Doesn't that matter that it starts that way, and he makes strategic decisions, not being told that what this could actually lead to is a 20-year incarceration? Well, first what I would say is the question is whether or not the record supported the district court's ultimate determination. That's one of the questions. An important question, right? Whether or not the district court clearly erred in its ultimate conclusions about the willfulness of the failure to pay restitution. This appellant, prior to the hearing, the government, first of all, the government wrote him a letter that said that the government may seek resentencing in March of 2020 before the hearing. But after the first couple of hearings? Before any of that. He was released from custody after the original sentencing. He's out of custody for enough time that he had become delinquent on his restitution obligation. The government sent him a letter that said, if you fail to pay restitution, we may seek resentencing. His probation officer reviews that letter with him, has him sign it in April prior to any of these hearings. Then at the first appearance, before the VOSR hearing, what's called a VOSR hearing, the government said, Your Honor, there may be basis for a resentencing here based on the history that already exists. We then have, again, the VOSR hearing, and you know, at every step of the way, we're talking about the potential for a 3614. So I accept what you're saying, that it's important for defense counsel to be aware of the potential ramifications of what's going on. But at the same time, it was both clear that it was a possibility, and also again, it would be one thing if they, again, after those hearings, Judge Hellerstein couldn't have said more times, and again, you look at the record, A, 395 through 400 roughly, where he's saying, I'm going to reopen the proceedings. You can recall any witness. You can extend your cross-examination of any witness you call, any other witness to make sure you are not surprised in any way. I'll give you whatever leeway you want. Call anyone you want. Ask even one more question you want on cross-examination until you're assured, I'm assured you had a full opportunity. I will give you the opportunity to identify anything in the record that you would not have done. Add anything to the record that you would like to do with regard to your argument that you were in some way fooled. I will give you time to identify anything that you would have done. And then it's not, and then multiple subsequent proceedings happen where nothing is identified. Not a single question, not a single witness, not any request. And so at that point, I think it's fair to say that this appellant had every opportunity for a hearing. The only reason there wasn't an additional hearing is because he didn't ask for it. And it's perfectly acceptable for the court to rely upon the record that had been established before it in making its determination, which is a separate determination whether or not the violation of supervised release had happened, but determining whether or not there had been a willful failure to pay restitution and whether or not that will... So assuming that that's right, that the district court could rely on the record that had been established previously, I think Ms. Glashazer was suggesting that the evidence just wasn't sufficient to reach that conclusion because the prior evidence was about making good faith efforts and how to get the passwords and whatever. So was there enough evidence to determine that he had willfully not paid the restitution? Absolutely, Your Honor. The appellant at the time of the original sentencing, the PSR reflected that he had over $60 million worth of assets or assets worth $60 million. He promised that he would pay. He then, at the hearing, the evidence that was adduced included that he had in January of 2023 texted a friend that he didn't need a job. He didn't need money because he was good for a while. He had eight figures, which again, in other words, could mean at least as much as $10 million. During that same period, the evidence included that he had a Wells Fargo account that he had omitted from a financial disclosure form that he had signed under penalty of perjury, in which he had transferred over $200,000 including from cryptocurrency exchange accounts. He had used that money to buy luxury items, you know, fancy sneakers, fancy consumer goods. Is Ms. Glashauser right that by the end of the proceedings, the government and defense both thought that he didn't have the ability to pay the restitution and really it's only the district court that thought that he did? It's absolutely not true. What the government's position was is that this story about why he couldn't access this particular Bitcoin was a ruse. We do not believe he owns that particular Bitcoin sitting at that particular wallet address, but the evidence is clear that he had access to assets and resources. He was moving hundreds of thousands of dollars from cryptocurrency exchanges into an undisclosed bank account. But does the government believe he had $60 million? He was bragging about having... I'm not asking that, because the government didn't object to that statement in the PSR as a factual error. You're saying you get it from the PSR. The $60 million? Yeah. At the time of the original sentencing, we took him at his word that he was representing that he had $60 million in assets. What is the point of time that matters? The time of the original sentencing, whether he had the ability to pay, or at the time of the hearing? Your Honor, they're both relevant, but... In terms of finding a willful refusal to pay. If he had taken steps to make himself unable to pay at the time on the date of the resentencing, he could have still been resentenced. We do not credit the idea that he was destitute or indigent at the time of the resentencing, when he was staying at a friend's apartment, a 2,800 square foot apartment in Tribeca, purportedly without paying any rent. We don't credit that he didn't have money. But regardless, even if he didn't have any money, if he had... At the time that the restitution order existed, if at any point following imposition of that restitution order, had taken steps to dissipate assets or to whatever, to make himself indigent, instead of paying his restitution obligation, the court could resent. Clearly, if he had the money at the time of the hearing, it's an easy question. But it seems like what you're saying, that if he had the money when representations were to Judge Hellerstein, I will satisfy this obligation. Judge Hellerstein took that into account in giving him a considerable reduction in what he otherwise would have faced, and then took steps that made sure he didn't have that money down the road. 3614 still could be triggered, in your view. Yes. I know that this is not the district court's view of what happened, but what if he never had the money, but made representations that he did to get a lower sentence, but never intended to pay? Would that be a willful failure to pay, or because he had the inability all along? It's not really a willful failure to pay. Yeah. Again, it's not the facts that we have here, because we have the subsequent history of the hidden accounts, the transfers of money, the purchase of luxury goods. I get that. But if someone in sentencing just said, made up that they are an extremely wealthy person, and there was no evidence that that person had any wealth, then I don't, Your Honor, I would think that would not support a finding of willful failure. Because they never could, even though they did intend to fool everybody into thinking that they could. It's still not a willful failure. Correct Your Honor. Correct Your Honor. If we assume that it was okay to get to resentencing, for the sake of argument for a moment, the sentencing itself, so we have admission of this video without anybody testifying about how we would know for sure that that's what Trulia said. So that's a question in and of itself, the admissibility of the video. But then that's compounded by the extreme reliance on that video in the sentencing. To me, it is a remarkable statement from the sentencing judge to say, quote, first he says, I'm talking about the video, he says, you said I can do ten years, so what? I'll have my money. Well, you'll get that chance. I sentence you to twelve years. Ten for that which you can take, and two more just because, in my judgment, you need to be deterred and to show respect. That's it. The last part is a paraphrasing. But the confluence of those two, of the video being admitted, which is questionable, and the fact that it then appears to be the sole basis for the sentence, ten plus two, and ten comes only from the video. How is that a procedurally reasonable sentence that takes into account the balancing of the 3553A factors, in spite of the fact that the judge talked about the factors before, when he gets to the end and says, but I'm not going to care about those, I'm going to care about ten years because you said it in the video, plus two for respect and deterrence? Your Honor, the video, there's no question that the video was a very significant consideration of the court in sentencing, and your Honor I believe read that correctly from the record. At the same time, I don't think it's the case that it's fair to say that it was the sole consideration, and I think this court takes judges at their word when they say that they considered all the 3553A factors, and Judge Hellerstein did discuss the seriousness of the underlying offense. He talked about the need for respect for the law and protection of the public here. Now, the reason why the video, I think, was so salient to the district court judge is because this is exactly what had played out in terms of, there was this video, the appellant said he was going to do this thing, and then that's exactly what appeared to have happened over the preceding several years. That is, he at that point had been moving amounts of cryptocurrency from who knows where into hidden accounts to fund his lifestyle, while he was enjoying the fact that he had only served in 18 months sentence. And so that video was of high relevance to the appellant's comment. Taking into account, I guess, at the first sentencing hearing, the district court thinks, well, this is a guy who did a crime but also is willing to make restitution, and so he comes up with one sentence. And then at the resentencing, he's saying, it's not just that you said this, but that it played out with you lying to me in all of these further proceedings over the course of years. I think that's correct, Your Honor. And doing a resentencing on the original offense, the district court can take into account, you know, what happened subsequent, or the compliance with the restitution order and that kind of thing? Yes, Your Honor. I think the court is obliged to consider the Section 3553A factors as they exist at that time. And, I mean, furthermore, the question is whether or not the district court had abused its discretion. And I think when you have this set of facts, where you have someone who helped steal $20 million... But that's substantive reasonableness you're talking about, right? Whether 12 years is fair for someone who was involved. Maybe yes, maybe no. What I'm talking about is procedural reasonableness of... And I hear you, we don't require sort of, what do we say, usually magical incantations or something, right? Right. But this is, this one is a pretty direct statement. I am giving you 12 years because it's 10 plus 2. And I'm having a hard time seeing why that doesn't supersede the generic discussion of the 3553A factors that come before. Your Honor, again, we've, to some extent, covered the ground. I think the court... I think we can add to that fact, though, that this is... Again, this is... In Judge Hellerstein's words, the sentence that he had thought more about than any other was 27 years on the bench. And the sentencing proceeding itself lasted quite a long... quite a long time. And so I think to take... Again, I don't question the heavy weight that the district court put on that particular factor. I think it's indisputable that it was important. But at the same time, it was not a rash decision. It was not something that Judge Hellerstein hadn't given careful consideration to.  given that, I think it was reasonable. Again, procedurally, I think the district court did all of the things that are required to make sure that it meets the procedural requirements. What's driving the sentence is the district court saying, you've been lying to me over the course of all of these proceedings about paying restitution and so on. Does that mean that this really is a punishment for the failure to pay restitution? Is that a problem? Does that make it look more like this is being punished for a kind of separate offense? It's not a separate offense. It is part of the punishment of the original sentencing. And the fact that the fact of his subsequent conduct in terms of lying and so on and so forth, I think continues to be relevant to the fact of the 3553A. The lying subsequently of being able to pay restitution and then not doing it and so on shows that he never intended to do it and that supports the argument that he needs a hefty sentence to be deterred because he thinks that it's worth committing these kinds of crimes even if he gets a jail sentence of up to 10 years. Can we just go back to the video briefly? Can you explain how the government authenticated the video before Judge Heller seen? Your Honor, the video was obtained by the government from Paramount, the production company or media company that had the ownership of it and obtained it with a certificate of authenticity. I'm sorry, I should have phrased that differently. How individuals provide information about who was on the video, that the defendant was on the video. Can you speak more about how that was presented? Your Honor, the government in its sentencing submission represented to the court that it had interviewed two witnesses who were associate producers on the program. One of those witnesses identified the appellant as the person who made the statements that were on the video and sat for the interview and that person attended the interview with the person. That person also provided the photograph which appears at the end of the red brief that you all have, which clearly shows the appellant sitting in the chair which is thereafter shown as well in the interview or in the video itself. And so the government had made all those representations to the court in advance of sentencing and also referred to them during the sentencing proceeding. Judge Hellerstein during the sentencing proceeding reviewed the video, looked at the photograph which was offered as an exhibit at the sentencing and compared the two and it was clear that the person sitting in the chair who appears on the film at the same time that the words are being spoken was the appellant. During the sentencing proceeding we then went over and listened multiple times to the relevant portion of the video and confirmed that the words that now appear in the transcript are accurate from the video. And so then the only question is whether or not the appellant made those statements and the district court reasonably concluded and certainly clearly error in concluding that the person who said the things that are on the video were the appellant. And so... Is it because you think it's implausible that the program would have interviewed him and then changed the words? It's implausible. It's inconsistent with what the witness told the government when the government interviewed that witness and it's more than implausible. It's incredible. But that was just presented through the government's submission. Those individuals, for example, did not testify. There was not a declaration from them or anything like that. How much did Mr. Truglia's  challenge the information from those individuals? There was... So, what I would say is in advance of the sentencing, there was discussion between the counsel about whether or not there was need for a hearing. My understanding, certainly, coming out of that was they were not challenging the authenticity of the hearing. Rather, the authenticity of the video. And my understanding from them was that the appellant didn't recall saying those specific words. That was basically the extent to the challenge to the video. And the... In the government's sentencing submission, the government represented that it could have the witness there at sentencing and maybe we should have had the witness there at sentencing. But, nevertheless, the defense, I don't think, went so far as to say he never said those things. They simply challenged the degree of the evidence that... He says there's absolutely no evidence that Mr. Truglia said those words. So, Your Honor, I think that's flatly contested by the record before Your Honors. Right, but you're saying that you didn't think defense counsel really argued that. I think he did. He or she, I don't know who it was at the time. Okay. Thank you very much, Mr. Kaposi. We'll turn back to Ms. Glashauser on rebuttal. The original sentencing was not based solely on Mr. Truglia paying restitution. It was based on the 3553A factors in their totality and Mr. Truglia received a median sentence for somebody convicted of that fraud with his guideline range. The second sentencing was only based on conduct relating to his payment of restitution. I think Judge Mahashi hits the nail on the head in saying that suggests strongly that it's really a new criminal charge. Despite that, it was not clear that he was being charged with Section 3614. The judge makes that clear after the VOSR hearing in January 24, the judge says the only formal notice we had was a VOSR and that's on A409 to suggest that after that, the judge offered to reopen an old hearing on something else is not due process. That shifts the burden to Mr. Truglia and it doesn't allow him to ever make strategic decisions about how to proceed on this extremely serious allegation of 3614, which was nothing like median sentence. He could have a new hearing, he could put in other evidence and so on. Why was he denied the opportunity to do that if the district court would have been so accommodating? The district court suggested that Mr. Truglia could put on new evidence. That's shifting the burden to Mr. Truglia. It was the government's burden to show that he had willfully violated Section 3614. That goes back to the idea that the evidence was insufficient to establish willfulness, right? No, it doesn't. It's a due process concern. He never got due process at any stage. He just didn't receive any of the normal steps that this court provides, the Supreme Court provides. Well, he could have said, well, actually if I had known that it was resentencing, I would have asked different questions of these witnesses and so he could have called them again, right? No, Your Honor. He needed a hearing on this charge after being told what he was facing. And one of the extraordinary things about how this whole case plays out is that the parties and the court are confused. At each court date, they have to reassess what is happening. That's partially because there's no formal documents explaining to Mr. Truglia what's happening, but it's also because this statute is used so rarely. There is a complete dearth of case law on this. This court has only ever mentioned this statute in footnotes, has never commented on what sort of process is required, on whether it's a new criminal charge, on what the standard of review is. The parties are working without guidance from the court and it's truly an unusual case. The government said at some point in their presentation that even if Mr. Truglia didn't have the money, that he could still be sentenced to 12 years for failing to pay restitution. No, actually I asked that question and they said, well, if he didn't have the money from the outset, then he couldn't be. But if he had the money and then dissipated his assets, then that would be a moral failure to pay. And he thinks that the determination from the district court is that he did have the ability to pay, at least at some point, and hopefully failed to pay. The government doesn't believe that Mr. Truglia has the asset that the court found he had that would have paid off his restitution. That's a Bitcoin account that now, at the time of resentencing, was worth $90 million. It makes no logical sense that Mr. Truglia ever would not have paid his restitution if he had been sitting on a $90 million account. The government doesn't believe that. They said that. The government believes that Mr. Truglia has lied about assets. The government's special agent showed that. Why does it make no sense? I mean, why is it possible that somebody could believe what is said in the video, which is that it's worth going to prison for 10 years if I get $90 million on the other side? He only got $600,000, Your Honor. He did not make... But you said, you know, if he had access to the thing, it would be $90 million and it wouldn't make sense for somebody not to pay the restitution. But maybe it would make sense because they'd rather have the money than avoid the prison cell. Well, those are different questions, Your Honor. As the court read the videos, I'd rather keep the money that I stole, which was between $600,000 and $700,000. When talking about whether the government believes he ever had the money to pay the restitution, there's no evidence that he did. Their special agent testifies about how the agent found a record that there was a falsified $15 million account that, in fact, did not have $15 million. So there's evidence that he has pretended to have money that he didn't have. His friend, who gets these text messages about how much... how he didn't need to work, says, I didn't know what those meant, and I also believe that Mr. Trulia portrayed himself as wealthy but wasn't, in fact. He's sleeping at a friend's apartment. He gets indigent counsel. And the court doesn't really make a record that he is indigent or that he's not indigent, make any finding. It's just that the court doesn't believe him. And that is not what the standard is under Section 3614. And here we have somebody serving 12 years in prison that neither party thinks had access to the Bitcoin account that was supposed to be how he paid restitution. That is a startling result, especially given the lack of process from the beginning, and it's one that this court should correct. Okay. Thank you very much, Ms. Glashauser. The case is submitted.